Robert L. Sepp, OSB #020932
Robert L. Sepp, Attorney At Law
2350 Willamette Falls Drive
West Linn, Oregon 97068
Tel: 503-305-7349
rsepp@msn.com
Attorney for Defendant, Raul Arcila

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 3:14 CR 00267-BR |
| PLAINTIFF, | DEFENDANT'S SENTENCING MEMORANDUM |
| vs. | |
| RAUL ARCILA | |
| DEFENDANT. | |

### SUMMARY OF PROCEEDINGS

On November 9, 2015, defendant was found guilty on four counts, by jury trial to Count 1 Conspiracy to Distribute Heroin in violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(C), & 846, as charged in the ten count Indictment. If applicable, the minimum sentence for Conspiracy to Distribute Heroin, resulting in death, is twenty (20) years imprisonment, a fine of $1,000,000, five (5) years of supervised release, and a $100 fee assessment. Count 2 Conspiracy to Distribute Heroin in violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(A)(i), & 846, If applicable,

DEFENDANT'S SENTENCING MEMORANDUM

the minimum sentence for Conspiracy to Distribute Heroin is ten (10) years imprisonment, a fine of $10,000,000, five (5) years to life of supervised release, and a $100 fee assessment and Counts 9 & 10 Possession with Intent to Deliver Heroin Title 21, United States Code, Section 841(a)(1), 841(b)(1)(B)(i) as charged in the ten count Indictment. The minimum sentence for Possession with Intent to Deliver Heroin is five (5) years imprisonment, a fine of $5,000,000, four (4) years to life of supervised release, and a $100 fee assessment. The Defense disagrees with the PSR's offense level calculation, the number of convictions (Counts 1 & 2 are but one conspiracy) and that Counts 1 and 2 are subject to mandatory minimum sentences.

## SENTENCING CONSIDERATIONS

While not bound by the Sentencing Guidelines, district courts must consult the Guidelines and take them into account when sentencing. *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 767 (2005). Even though the Guidelines are advisory, they remain influential in an effort to ensure national consistency. *Gall v. United States*, 128 S. Ct. 586, 596 (2007) ("to secure nationwide consistency, the Guidelines should be the starting point and initial benchmark for sentencing); see also *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) ([The] continuing duty of district courts to consult the Guidelines is statutory.).

After the parties are given a chance to argue for a sentence they believe is appropriate, the Court should consider the Section 3553(a) factors and decide if they support the sentence suggested by the parties. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (citing *Gall*, 128 S. Ct. at 596-97, n.6). The Court must make an

DEFENDANT'S SENTENCING MEMORANDUM

individualized determination based on the facts, may not presume that the Guideline range is reasonable, and should not give the Guidelines factors more or less weight than other Section 3553(a) factors. *Id.*

If the Court decides an outside-Guidelines sentence is warranted, the Court must ensure the justification is sufficiently compelling to support the degree of variance. *Id.* And finally, once a sentence is selected, the Court must explain it sufficiently to permit meaningful appellate review. *Id. at 992.*

Factors to consider under 18 U.S.C. Section 3553(a) include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to provide just punishment for the offense; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to protect the public from further crimes of the defendant; and the need to provide the defendant with needed training, care, or treatment.

## SENTENCING GUIDELINES

A. Offense Level Calculation

The Defense agrees that the Guideline Section 2L1.2(a) prescribes a base offense level of 38 for highest level crime, Conspiracy to Distribute Heroin, resulting in death, in violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(C).

The defense objects to the PSR determination that Defendant is subject to a 2 level increase for possession of a dangerous weapon. Section 2D1.1(b)(1) provides for a two-level enhancement to the base offense level if a, "dangerous weapon (including a

DEFENDANT'S SENTENCING MEMORANDUM

firearm) was possessed," during a drug trafficking offense. The two-level dangerous weapon, "adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1), cmt. n.3; *see also United States v. Nelson*, 222 F.3d 545, 551 n.3 (9th Cir. 2000); *United States v. Lopez-Sandoval*, 146 F.3d 712, 714 (9th Cir. 1998).

The facts offered to support the 2 level increase is a photograph recovered off of Defendant's phone. That the picture, "appears," to be taken in the stash house, and Defendant, "appears to be holding narcotics.(PSR Para. 32).

There is no date on the picture to indicate if it was taken before or after Defendant joined the conspiracy.   There were no firearms or replicas found at the residence.   No witness testified that Defendant ever possessed firearms. No witness testified that Defendant possessed firearms at either the March 31, 2014 controlled buy or the April 2, 2014 controlled buy.   Despite being under intense law enforcement surveillance.   No firearms were recovered from the vehicle Defendant was a passenger in on April 2, 2104.   The Defendant has shown that it is clearly improbable that the firearm was connected with the offense.

*B. Criminal History Category*

The Defense agrees with the criminal history summary contained in Paragraph 46 of the PSR. The Defense agrees that he is properly scored in Criminal History Category IV.

*Counts 1 and 2 Merge Into One Conviction*

The Ninth Circuit has declined to apply the *Blockburger* double jeopardy analysis in cases where multiple conspiracies were charged, either consecutively or simultaneously, under the same conspiracy statute. It noted, that "[p]roviding the double jeopardy protection recognized in 'Braverman' presents a peculiar problem and requires application of a different test.". *United States v. Montgomery*, 150 F3d 983, 989 (9th Cir 1998):

> "[T]o determine whether two conspiracy counts charge the same offense and so place the defendant in double jeopardy, we consider five factors: (1) the differences in the periods of time covered by the alleged conspiracies; (2) the places where the conspiracies were alleged to occur; (3) the persons charged as coconspirators; (4) the overt acts alleged to have been committed; and (5) the statutes alleged to have been violated. *United States v. Stoddard,* 111 F.3d 1450, 1454 (9th Cir.1997) (citation and internal quotation marks omitted)." *United States v. Montgomery*, 150 F3d 983, 990 (9th Cir 1998).

Time Period: The time periods of the two conspiracies wholly overlap. The Government introduced no evidence that the Conspiracy to Distribute Heroin, charged in Count One, and the Conspiracy to Distribute Heroin, charged in Count Two had a different ending date. All of the members, known, were arrested by April 2, 2014. No evidence was adduced at trial to show a conspiracy continued beyond April 2, 2014.

Geographic Location: The record demonstrates that there was tremendous overlap in the places where the objects of the conspiracies were put into effect. With respect to location, Count 1 in indictment alleges a conspiracy in the District of Oregon, as does Count 2. The evidence showed that all, if not, the vast majority of activities occurred in the Portland, Oregon metro area.

Participants: Count One named Sandoval-Ramos, Ramirez-Coronel, Arcila, Baker, Rosa and Godvin, and others, known and unknown, as members of a conspiracy to distribute Heroin in Oregon. Count Two named Sandoval-Ramos, Ramirez-Coronel[1], Arcila, & Baker, and others, known and unknown, as members of a conspiracy to distribute Heroin in Oregon. The members identified in Count One are "wholly included" in Count Two, there is complete overlap between members in both conspiracies, which is strong evidence of one conspiracy.

However, strong overlap does not compel a finding that a single conspiracy existed. *United States v. Guzman*, 852 F2d 1117, 1120 (9th Cir 1988) (focusing on the different activities of the members in each conspiracy where two conspiracies had overlapping members). The Court must determine whether the roles performed by the overlapping members were different in each conspiracy. *See id.* The Government introduced evidence for both conspiracies that Sandoval-Ramos role was to mule the heroin and money and pay utilities at the stash house. That the drugs were transported to the stash house. The Government presented evidence that the heroin was weighed and packaged at the stash house. There was no evidence of a second stash house. No evidence that Mr. Sandoval-Ramos' home was used in the same manner as the stash house. The government presented evidence that a call would be made to place an order, a call would then be made to Sandoval-Ramos, who would then call the stash house. The order would be delivered. The Government presented evidence through

---

[1] Placido Ramirez-Coronel was not tried and is in fugitive status

Baker that the deliveries always took place at night and in the same general area of the stash house. Baker also testified that the same vehicles were used to make the delivery. Baker testified that during the relevant time he had only one source of heroin. Baker testified that he would sell the heroin to dealers, including Rosa who would sell to Godvin.

The evidenced the jury based its conviction on showed Sandoval-Ramos, Ramirez-Coronel, Arcila, & Baker played identical roles, in each of the two conspiracies, there exists significant overlap.

Overt Acts: The conspiracies charged in Counts One and Two allege the same overt acts. Count One alleges Heroin distribution in Oregon, and Count Two alleges Heroin distribution in Oregon.

Statutes Violated: When the two conspiracies charged violate the same statute, the Court considers, "whether the goals of the two conspiracies were similar." *Stoddard,* 111 F.3d at 1456. Here, the goal of the conspiracy charged in Count One was to distribute Heroin in Oregon. The goal of the conspiracy charged in Count Two was to distribute Heroin in Oregon. "Different goals suggest the existence of two distinct conspiracies". *United States v. Montgomery*, 150 F3d 983, 991 (9th Cir 1998). Therefore, like the case at hand, similar goals suggest the existence of only one conspiracy.

Applying the, "factor analysis," test articulated in *Stoddard,* examined in the light most favorable to the Government, supports the conclusion that Counts One and Two

charged one single conspiracy. Defendant requests that the convictions against him for the two conspiracies charged under 21 U.S.C. § 846 violate the Double Jeopardy Clause and Count One and Count Two should merge into one conviction.

### CO-DEFENDANT'S SENTENCING ARGUMENTS

Defendant Raul Arcila, where applicable, joins, incorporates and adopts Defendant Sandovol-Ramos' sentencing motion/argument that the 20 and 10 year mandatory minimums do not apply as to Counts 1 and 2. (Pacer docket number 233)

DATED this April 6, 2016.

                                         */s/ Robert L. Sepp*
                                         Robert L. Sepp, Attorney for Defendant