FILED 23 DEC '19 10:25 USDC-ORP

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,
          Plaintiff-Respondent,

v.
                                   Crim. Case No. 3:14-cr-267-BR
                                   Civil Action No. _____

RAUL ARCILA,
              Defendant-Petitioner.
_____/

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE CONVICTION AND SENTENCE

COMES NOW the petitioner, Raul Arcila, pro-se, and who respectfully files within this Honorable Court this Memorandum of Law in Support of Motion to Vacate Conviction and Sentence.

## I. JURISDICTION

This court has jurisdiction over this matter pursuant to Title 28, United States Code, section 2255, which reads, in relevant part, that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the grounds that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct sentence." 28 U.S.C. section 2255.

## II. STATEMENT OF THE CASE

On June 24, 2014, Mr. Arcila and six others were charged by indict-
ment with conspiracy to distribute heroin, in violation of Title 21, United
States Code, sections 846 and 841(a)(1). Count 1 of the indictment charged
that "[t]he conspiracy distributed heroin, the use of which resulted in the
death of another person ..." Count 2 further charged that "[the] violation
involved 1,000 grams or more of ... heroin[.]" Counts 9 and 10 charged
Mr. Arcila with possession with intent to distribute heroin on two separate
dates, further alleging that each possession "involved 100 grams or more ...
of heroin."

Mr. Arcila entered a plea of not guilty at his arraignment on July 1,
2014, and the magistrate judge ordered him detained pretrial as a danger
to the community and a flight risk. On July 2, 2014, he was released on
conditions. He came back into federal custody after a violation and has been
detained since January 27, 2015.

Trial commenced on November 3, 2015. Presentation of testimony
and arguments concluded on November 6, 2015, and the jury returned a
verdict of guilty on all applicable counts. Additionally, the jury unanimously
found beyond a reasonable doubt that (1) "[Delong] used heroin distributed
in the course of this conspiracy which resulted in his death;" (2) "death
resulting from use of the distributed heroin was a reasonably foreseeable
result of the Count 1 conspiracy;" (3) "1,000 grams or more of heroin was
involved in [the conspiracy alleged in Count 2]; and (4) "the amount of
heroin possessed with intent to distribute by [Arcila], or someone he aided

2.

and abetted, was more than 100 grams."

A sentencing hearing was held on April 18, 2016. The district court sentenced Mr. Arcila to 240 months of imprisonment as to Count 1 and 60 months each as to Counts 9 and 10, to run concurrently, followed by a 5-year term of supervised release. A timely notice of appeal was filed on April 20, 2016.

On direct appeal, Mr. Arcila raised five claims: (1) whether the district court erred by giving reasonably foreseeable instructions to the jury; (2) whether the district court erred in allowing the government to invent a proximate cause requirement; (3) whether the district court abused its discretion in allowing the government to rely on hearsay testimony intended to bolster the testimony of informants whose credibility was unchallenged; (4) whether the district court erred in imposing a mandatory minimum sentence for a conviction of conspiracy to distribute heroin when the sole object of the conspiracy was not a factor that would trigger a mandatory minimum sentence; and (5) whether the district court erred in calculating the applicable sentencing guideline range. On March 19, 2018, the United States Court of Appeals for the Ninth Circuit affirmed Mr. Arcila's conviction and sentence. See United States v. Arcila, 727 Fed. Appx. Lexis 279 (9th Cir. 2018). In addition, the Ninth Circuit denied Mr. Arcila's petition for rehearing on June 12, 2018. See United States v. Arcila, 2018 U.S. App. Lexis 15795 (9th Cir. 2018).

3.

Mr. Arcila filed an application for a writ of certiorari to the Supreme Court of the United States. The writ was denied on October 15, 2018. See Arcila v. United States, 139 S.Ct. 388, 202 L.Ed.2d 296 (2018).

Mr. Arcila is currently in the custody of the Bureau of Prisons at the Federal Correctional Institution, Herlong. His projected release date is September 3, 2032.

### III. ARGUMENT[1]

Mr. Arcila alleges that his trial attorney provided ineffective assistance of counsel were trial counsel failed to consult with and hire a forensic/ medical expert.

Under the now familiar two-pronged test announced in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), an ineffective assistance of counsel claim has two components. "First, the defendant must show that counsel's performance was deficient." Id. at 687. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. However, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

As previously noted, Mr. Arcila and others were indicted for conspiring to distribute heroin, which resulted in death, in violation of Title 21, United States Code, sections 841(a) and 846.

Under the penalty provision of section 841, if a person distributes a schedule I or II controlled substance "such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life." Title 21, United States Code, section 841(b)(1)(C).

Stated plainly, a defendant who distributes a schedule I or II controlled substance, such as heroin, faces a maximum sentence of 20 years. If, however, a person dies as a result of using the distributed heroin, the person then faces a statutorily mandated minimum sentence of 20 years while the maximum sentence increases to a term of life imprisonment.

A. Deficient Performance Under Strickland

Based on the indictment returned against Mr. Arcila, defense counsel had to be well aware that the government sought to hold Mr. Arcila responsible for Justin Delong's death. Under the government's theory of the case, Mr. Delong overdosed on heroin furnished by members of the conspiracy. To support its contention, the government introduced the testimony of Dr. Larry Lewman, a forensic pathologist with the state's medical examiner office. Dr. Lewman had performed the autopsy of Mr. Delong on March 30, 2014 and opinioned that the cause or manner of death was "Intravenous Drug Abuse (Heroin)." Exhibit 1 -- State Medical Examiner Report, at 1.

During his testimony, Dr. Lewman explained how heroin is metabolized in the body, including the production of 6-monoacetylmorphine (6-MAM). According to Dr. Lewman, a trace amount of 6-MAM was found in Mr. Delong's urine sample. Based on the presence of 6-MAM, Dr. Lewman posited that Mr. Delong had died of a heroin overdose because 6-MAM is only produced through heroin use.

To be sure, the government also introduced other evidence to support its claim that Mr. Delong had died of a heroin overdose. This evidence included small baggies of heroin, hypodermic needles, and photographs of the deceased, the disheveled bedroom in which Mr. Delong's body was discovered, and drug para- phernalia as well as witness testimony that Mr. Delong had purchased heroin.

The United States Attorney (represented through his Assistant U.S. Attorneys) had a job, a duty really, to offer evidence to the jury that tended to show beyond a reasonable doubt that Mr. Delong's death was the result of an overdose of heroin furnished by members of the conspiracy. The government fulfilled its duty. That is why it is important to note at this point that Mr. Arcila is not making a sufficiency of the evidence claim. Indeed, the Ninth Circuit has repeatedly held that in order to obtain a conviction under the provision, the government need only establish evidence that shows that "but for" the drug use, the victim would still be alive. See e.g. United States v. Houston, 406 F.3d 1121 (9th Cir. 2005). See also Burrage v. United States, 571 U.S. 204, 134 S.Ct. 881, 187 L.Ed.2d 715 (2014).

The Supreme Court, however, has held that a defense attorney also has a duty under the Sixth Amendment to the U.S. Constitution. Namely, a defense attorney must subject the government's case to "meaningful adversarial testing."

6.

United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657
(1984)(holding that a court may assume prejudice if "counsel entirely fails to
subject the prosecution's case to meaningful adversarial testing).

Arcila asserts that defense counsel failed in this endeavor, resulting in
ineffective assistance of counsel.

"The right of a criminal defendant to an adversary proceeding is funda-
mental to our system of justice." United States v. Thompson, 827 F.2d 1254,
1258 (9th Cir. 1987).

The government's case presented defense counsel with numerous avenues
in which to attack. For example, Dr. Lewman indicated on the State Medical
Examiner Report that the cause or manner of Mr. Delong's death was "Intravenous
Drug Abuse (Heroin)." Thus, according to Dr. Lewman, Mr. Delong died of a heroin
overdose. The problem with this finding is that it was made on March 30, 2014,
a few hours after Mr. Delong's body was discovered. Without the toxicology report,
especially the urinalysis report, it was impossible for Dr. Lewman to positively
indicate that the cause of death was a heroin overdose since he needed that
report to determine if 6-MAM was present. It was not until May 26, 2014, how-
ever, that Dr. Lewman was informed that Mr. Delong's urine sample contained
6-MAM.

With specific regards to claims of ineffective assistance of counsel due
to a failure to conduct a pretrial investigation, including failure to consult with
expert witnesses, the Supreme Court has held that a defense attorney "has a duty
to make reasonable investigations or reasonable decisions that make particular
investigations unnecessary." Strickland, 466 U.S. at 691.

7.

To show ineffective assistance of counsel based on counsel's failure to investigate, a petitioner must demonstrate that further investigation would have revealed favorable evidence. Deja v. Stewart, 97 Deja 1246, 1255 (9th Cir. 1996). See also Hendricks v. Calderon, 70 Deja 1032, 1042 (9th Cir. 1995). Mere speculation or conclusory allegations are insufficient, however. Jackson v. Calderon, 211 F.3d 1148, 1155 (9th Cir. 2000). See also Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001).

Moreover, "ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." Rhoades v. Henry, 596 F.3d 1170, 1193 (9th Cir. 2010). Accordingly, this court "examine[s] the evidence that could have been presented to the jury had counsel performed competently and compares that to the evidence that the jury actually heard.... If the difference between the evidence that could have been presented and that which was presented is sufficient to 'undermine confidence in the outcome' of the proceeding, the prejudice prong is satisfied." Duncan v. Ornoski, 528 F.3d 1222, 1240 (9th Cir. 2008)(quoting Strickland, 466 U.S. at 694).

To that end, Mr. Arcila's family hired Dr. Francisco Jesus Villalobos Perez, a forensic pathologist with impeccable credentials, and Ms. Hilda Silva Villalobos Perez, a criminologist and criminal profiler with years of experience and training in forensic analysis, to review the documentary evidence in Mr. Arcila's case.

According to these two expert witnesses, Dr. Lewman (as well as deputy medical examiner Charles Lovato) made two findings with respect to Mr. Delong. The first finding was that the cause of death for Mr. Delong was an intravenous drug abuse of heroin while the second finding indicated that no evidence existed

8.

to show that Mr. Delong had suffered any physical violence upon his person at the time of his death. Mr. Arcila's expert witnesses noted, however, that Dr. Lewman failed to consider another possible cause of death, namely, morphine and/or codeine overdose. They opinioned that Dr. Lewman may have exhibited a bias towards a finding of heroin overdose because of preconceived notions by the investigative team and by a later finding of a trace amount of 6-MAM in Mr. Delong's urine sample.

1. Preconceived Notions

From the onset, the investigative team conducted its investigation with the preconceived mindset that Mr. Delong had died of a heroin overdose. For instance, on March 29, 2014 (the same day that Mr. Delong's body was discovered), Detective S. Hegland, a detective with the Washington County Sheriff's Office, reported that Mr. Delong's death was an "unattended heroin overdose" and that he based his conclusion on "evidence at scene & review of victim's phone contents." Exhibit 2 -- Follow-Up Report of Detective Hegland, at 1.

Yet as criminologist Ms. Villalobos Perez, who has passed certification examinations administered by well respected forensic organizations such as the International Association of Forensic Investigators, explained to Mr. Arcila's family, through her years of experience and training, investigators should keep an open mind about the cause of death until all relevant evidence has been collected and analyzed so as to not become biased and potentially overlook other evidence. See Exhibit 3 -- Resume of Ms. Villalobos Perez.

Experience and training has shown Ms. Villalobos Perez that a death

9.

at a crime scene may appear to be the result of one type of drug, but through further investigation, it was found that the death was actually the result of an entirely different drug -- a drug that was not at the crime scene because it had been ingested and subsequently killed the victim before he could take the drug actually found at the crime scene.

Yet, in this case it was the preconceived notion that Mr. Delong died of a heroin overdose that permeated the atmosphere. Indeed, when Detective Hegland arrived at the scene, about an hour after the discovery of the body, he was immediately informed by Deputy Medical Examiner, Dr. Lovato, that Mr. Delong's death was the result of a heroin overdose. See Exhibit 2 -- Follow-Up Report of Detective Hegland, at 4.

2.  Qualitative versus Quantitative Findings[2]

Dr. Villalobos Perez, who has many years of experience and training in the field of forensic pathology, see Exhibit 4 -- Curriculum Vitae of Dr. Villalobos Perez, advised Mr. Arcila that Dr. Lewman was unduly prejudiced towards a finding of heroin overdose based on the evidence recovered at the scene and the presence of 6-monoacetylmorphine (6-MAM) in Mr. Delong's urine sample. He concurred with Ms. Villalobos Perez's assessment that Dr. Lewman and the rest of the investigative team prematurely (and incorrectly) concluded that Mr. Delong had died of a heroin overdose.

With regards to the presence of 6-MAM in Mr. Delong's urine sample, Dr. Villalobos Perez critically noted that the toxicology report only established a qualitative finding, that is, the presence of 6-MAM was detected, but no quantity was determined. See Exhibit 5 -- Postmortem Toxicology Worksheet, at 2.

As Dr. Villalobos Perez informed Mr. Arcila during one of their telephone conversations, the importance of detecting 6-MAM is two-fold. First, some toxicology reports can only determine the presence of an "opiate," without identifying which specific opiate derivative is actually present. However, since only heroin produces 6-MAM, one of its active metabolites, it is conclusive proof that a person at some point had heroin in his or her system. Second, the reason that a qualitative analysis is performed to detect the presence of 6-MAM rather than a quantitative one is that 6-MAM only remains in the blood for approximately 5 to 40 minutes and in urine for several hours.

Based on their unduly prejudicial investigative notions and a trace finding of 6-MAM, Dr. Villalobos Perez could understand how Dr. Lewman and the investigative team may have only found (and looked for) one possible cause of death – heroin overdose. But Dr. Villalobos Perez offered Mr. Arcila an alternative cause of death, based on the same available evidence.

Assume for the moment that Mr. Delong had codeine and morphine in his possession (both of which were detected in the toxicology report), but he wants to use his drug of choice, heroin. After he obtains the heroin and injects it, he does not get the same euphoric feeling that he used to achieve months ago, before he stopped using the drug. Nor does it prove fatal. But he decides to try a novel approach. He takes the codeine and morphine. Alas, this combination kills him. When the deputy medical examiner and law enforcement investigative team arrive at the scene, they are confronted with a scenario that appears to be a heroin overdose (but is in fact, a morphine and codeine overdose).

11.

B. Prejudice Under Strickland

This entirely plausible, alternative scenario would have been the theory
that the jury would have heard from two highly qualified forensic experts, if
defense counsel had consulted with expert witnesses. As noted earlier, to
determine if the prejudice prong has been met, this court should examine
the evidence that could have been presented to the jury had counsel performed
competently and compares that to the evidence that the jury actually heard."
Duncan, 528 F.3d at 1240.

However, this court should examine the evidence from the perspective
of the jury (i.e. like a layperson) rather than from the court's or expert's
perspective, keeping in mind that the defense only needed to plant the seed
of reasonable doubt in the minds of the jurors (which differs greatly from a
sufficiency of evidence claim).

At trial, the jury heard evidence from the government's witnesses that
Mr. Delong died of a heroin overdose. This evidence essentially went uncontra-
dicted. The jury was not offered an alternative theory nor was it lead to believe
that the cause of death finding was merely a professional opinion, not a fact.

Had defense counsel introduced the testimony of the two expert witnesses
cited herein, the jury would have learned that the cause of death investigation
was flawed and biased from the onset. Ms. Villalobos Perez would have been able
to point on the various flaws in the investigation and the inherent biases of the
personnel involved in the investigation, all of which would have been supported
by the documentary evidence -- some of which has been described herein.

In conjunction with the criminologist's testimony, Dr. Villalobos Perez
would have testified that since the cause of death involved an opiate, it was not

12.

an exact science, especially when multiple opiate based drugs were concerned. For instance, heroin has a half-life of 2 to 6 minutes and is generally meta-bolized too quickly to be detected in autopsy samples. See e.g. Ashley D. Ellis, Garald McGwin, Gregory G. Davis & Daniel W. Dye, Identifying cases of heroin toxicity where 6-acetylmorphine is not detected by toxicological analyses, Forensic Science, Medicine and Pathology (April 25, 2016). https://www. ncbi.nlm.nih.gov/pm/articles/PMC4967084.

Given that this case involved heroin, codeine, and morphine, it was just as plausible that Mr. Delong died of a codeine and morphine overdose as a heroin overdose. This would have given the jury that kernel of reasonable doubt. And the jury's options would have been more favorable, at least to some jurors, as they could still find Mr. Arcila guilty of distributing heroin, while not finding him responsible for Mr. Delong's death because it was given a plausible reason to do so.


## IV.  CONCLUSION

WHEREFORE, based on the facts of this case, the argument raised herein, and relevant case law, Mr. Arcila respectfully requests that this Honorable Court grant him an evidentiary hearing so that his expert witnesses, who have repeatedly informed him that they would be willing to testify, and can testify on his behalf and this Honorable Court may then find that defense counsel provided ineffective assistance of counsel.  Mr. Arcila further asks this Honorable Court to grant him any other relief that the Court finds just and equitable.

## V. DECLARATION

I, Raul Arcila, hereby declare, under the threat of perjury, that the information contained in this Memorandum is true, correct, and accurate to the best of my knowledge, belief, and understanding.

Executed this 18th day of December, 2019, at Herlong, California.

_Raul A_____

Raul Arcila, pro-se

---

1   Mr. Arcila raised two claims in his original Motion to Vacate Conviction. However, he has been unable to locate the witness and secure a signed affidavit from said witness. As a result, Mr. Arcila withdraws his second ineffective assistance of counsel claim.

---

2   Dr. Villalobos Perez produced his written report in Spanish, a language that Mr. Arcila finds easier to understand, especially with regards to medical and technical terminology. However, Mr. Arcila is presently having Dr. Villalobos Perez's report translated into English for the benefit of the court, U.S. Attorney's Office, and defense counsel. He will file it as soon as it is translated.

## CERTIFICATE OF SERVICE

I, Raul Arcila, hereby certify that a true and accurate copy of the

foregoing Request for Leave to Amend Pleadings and Memorandum in

Support of Motion to Vacate Conviction and Sentence has been sent on this

day, through the U.S. Mail, postage pre-paid, to:

    Leah Bolstad, AUSA
    United States Attorneys Office
    1000 SW Third Avenue
    Portland, OR 97204

    Executed on this 19th day of December, 2019 at Herlong,

California.


_Raul A_____
Raul Arcila
Reg. No. 76395-065
Federal Correctional Institution
P.O. Box 800
Herlong, CA 96113

# EXHIBIT 1

# OFFICE OF THE STATE
## MEDICAL EXAMINER

WASHINGTON
DELONG, Justin Nicholas

REPORT FORM

13?°° SE 84th Suite 100
Ct    .mas, OR  97015
Phone 971-673-8200

Page 1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **NAME OF DECEASED** | | | | | | **SME CASE#** | |
| | DELONG LAST | | Justin FIRST | | Nicholas MIDDLE | 14-0751 | |
| | ALIAS | | | | | **COUNTY:** WASHINGTON | |
| **PHYSICIAN / INVESTIGATOR** Charles Lovato | | **REPORT DATE/TIME** 3/30/14 | 00:53 | **ARRIVAL DATE/TIME** 3/29/14 | 14:34 | **Death Cert No.** | |
| **IF DELAYED, WHY?** | | | | | | **County CASE#** 14-0064 | |

**CALL INFO**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **DOB** 10/14/1987 | **AGE** 26 | **MONTHS** 5 | **DAYS** 15 | **SEX** Male | | **RACE** White | |
| **HOME ADDRESS** 19070 SW Blanton St | | | | | | **LATITUDE** N | **LONGITUDE** W |
| Aloha CITY | | OR STATE | | 97007 ZIP | | **HOME PHONE** | |
| **SS#** 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 | **MARITAL STATUS** Single | **EMPLOYER / OCCUPATION** | | Construction | | | |

**DECEDENT**

| | | | | | | |
|---|---|---|---|---|---|---|
| **DIEDFOUND** FOUND | **DATE/TIME OF DEATH** 3/29/2014 | 13:04 | **FOUND BY** Dustin Kilty | | | |
| **DEATH ADDRESS** 19070 SW Blanton St | | | | | **LATITUDE** N | **LONGITUDE** W |
| Aloha CITY | | OR STATE | | 97007 ZIP | | |

**DEATH**

| | | | | | |
|---|---|---|---|---|---|
| **LAST KNOWN ALIVE DATE/TIME** 3/28/14  23:00 | **BY:** Dustin Kilty - Roommate | **ADDRESS:** 19070 SW Blanton St | | | |
| | | Aloha CITY | OR STATE | 97007 ZIP | |
| **INCIDENT DATE/TIME** | 19070 SW Blanton St | | | | |
| **LATITUDE** N | | Aloha CITY | OR STATE | 97007 ZIP | |
| **LONGITUDE** W | | | | | |
| **POLICE** Washington County Sheriff's Office | **OFFICERS** Deputy Cutler | | | **PD CASE#** 14-504612 | |
| **FIRE UNIT(S)** | **AMBULANCE** Metrowest | | **OTHERUNIT** | | |

**INCIDENT**

| | | |
|---|---|---|
| **NEXT - OF - KIN** Ember L. Gren | **RELATIONSHIP** Mother | |
| **NOK ADDRESS** 4850 SW 11th St #220 | **NOK PHONE** | |
| Gresham CITY | OR STATE | 97080 ZIP |
| **NOTIFIED BY:** Family Members | **METHOD** Phone | **DATE/TIME NOTIFIED** 3/29/14 |
| **IF NOT IN PERSON, WHY NOT?** Family made notification prior to my arrival. | | |

**NOTIFICATION**

| | | |
|---|---|---|
| **FINGERPRINT?** Yes | **FINGERPRINT BY** Cpl. Saunders | **METHOD ID MADE** Witness At Scene |

**ID MADE**

| | |
|---|---|
| **TRANSPORTED TO MEDICAL EXAMINER'S OFFICE** Yes | **BY:** Springer @ Son |
| **REASON FOR TRANSPORT** Probable Heroin Overdose with criminal charges pending. | |
| **FUNERAL HOME** Springer & Son | **NAMED BY:** Family |  **DATE NAMED:** |

**DISPOSITION**

| | | |
|---|---|---|
| **CAUSE OF DEATH:** Intravenous Drug Abuse ( Heroin ) | | |
| **MANNER OF DEATH:** Accident | **OTHER SIGNIFICANT FINDINGS:** | |
| **AUTOPSY?** Yes | **BY?** Larry V. Lewman. M.D. | |
| **MEDICAL EXAMINER/FORENSIC PATHOLOGIST** Larry V. Lewman, M.D. | | |

**CAUSE/MANNER**

Produced Pursuant to Protective Order

SANDOVAL_RAMOS003699

# OFFICE OF THE STATE
# MEDICAL EXAMINER
## REPORT FORM

WASHINGTON

DELONG, Justin Nicholas

14-0751

Page 2

## PHYSICIAN

| PHYSICIAN | | PHONE | |
|---|---|---|---|
| Unkown | | | |

**MEDICATION**

Unkown

**SMOKING HX:**

## EXAMINATION

| DATE/TIME | | PLACE | |
|---|---|---|---|
| 3/29/14 | 14:34 | Scene | |

| HEIGHT: | WEIGHT: | HAIR COLOR | EYE COLOR |
|---|---|---|---|
| 72 | 244 | Sandy | Green |

| POSITION | MOVED? |
|---|---|
| Supine | No |

| LIVOR | RIGOR | BODY HEAT |
|---|---|---|
| Blanching Posterior | Early Face Neck Arms Legs | Cool |

| | SURROUNDING TEMP. |
|---|---|
| | 70 |

**LOCATION AND DEGREE OF PUTREFACTION**

None

**DETAILED BODY DESCRIPTION**

Se narrative

## CLOTHING

**CLOTHING**

None

| JEWELRY | CASH | PROPERTY REMOVED |
|---|---|---|
| No | No | None |

**OTHER PROPERTY**

None

## SEROLOGY DATA

| BLOOD DRAW? | BY WHOM? | BLOOD ALCOHOL SENT? | BA RESULTS: | TOX SENT? | TOX RESULTS: |
|---|---|---|---|---|---|
| ADMIT BLOOD AT HOSP? | PICKED UP? | BY WHOM? | | | |
| TESTED BY HOSP? | RESULTS | | | | |
| URINE DRAWN? | VITREOUS DRAWN? | VITREOUS TIME | | | |

## MISC DATA

| PHOTOS TAKEN? | BY WHOM? |
|---|---|
| At Scene | C. Lovato |
| CRIME LAB AT SCENE? | WHO? |

## INFORMANTS

| INFORMANT1 | INFORMANT2 |
|---|---|
| Deputy Cutler | Cpl. Saunders |
| INFORMANT3 | INFORMANT4 |
| Kate Morin - Deceased Aunt | |

April 23, 2014

Produced Pursuant to Protective Order

SANDOVAL_RAMOS003700

# EXHIBIT 2

| WASHINGTON COUNTY SHERIFF'S OFFICE | **FOLLOW-UP REPORT** | ☒ SUPPLEMENTAL ☐ CLEARANCE | PAGE / OF 1 / 5 |
|---|---|---|---|

| 1 CASE NO 14-504612 | 2 REFER CASE NO 14-504622 14-504683 14-504786 14-504878 | 3 INCIDENT NO | |
|---|---|---|---|

| 6 DATE / TIME REPORTED (Original Report Date/Time) 3/29/2014  1304 HRS | 7 DATE / TIME OF THIS REPORT 3/29/2014 |
|---|---|

**8 LOCATION OF OCCURRENCE (Include zip code)**
19070 SW BLANTON ST., ALOHA, OR

**9 SUBJECT OF THIS REPORT (Crime + Summary)**
UNATTENDED HEROIN OVERDOSE DEATH - EVIDENCE AT SCENE & REVIEW OF VICTIM'S PHONE CONTENTS

SUSPECT / VICTIM INFORMATION

| 10 CODE DE | 11 NAME: LAST  FIRST  MIDDLE **DELONG, JUSTIN NICHOLAS** | 12 ID – DL # / STATE 7384747 / OR | | 14 SEX M | 15 RACE W | 16 DOB |
|---|---|---|---|---|---|---|
| 17 HOME ADDRESS (Include zip code) **19070 SW BLANTON ST., ALOHA, OR** | PRIMARY LANGUAGE: | | 18 ☐ HOME ☐ CELL | 19 HT | 20 WT | 21 HAIR | 22 EYES |
| 23 BUSINESS / SCHOOL ADDRESS | EMAIL ADDRESS: | | | 24 WORK HOURS | 25 ☐ WORK ☐ CELL |
| 26 CODE | 27 NAME: LAST  FIRST  MIDDLE | 28 ID – DL # / STATE | | 30 SEX | 31 RACE | 32 DOB |
| 33 HOME ADDRESS (Include zip code) | PRIMARY LANGUAGE: | | 34 ☐ HOME ☐ CELL | 35 HT | 36 WT | 37 HAIR | 38 EYES |
| 39 BUSINESS / SCHOOL ADDRESS | EMAIL ADDRESS: | | | 40 WORK HOURS | 41 ☐ WORK ☐ CELL |

**42 COPIES:**
☐ CART    ☐ DA    ☐ DET    ☐ FITE    ☐ IGET    ☐ WIN    ☐    ☐    ☐    ☐

**MENTIONED:**

| Deputy Cutler | WCSO |
|---|---|
| Investigator JC Crecelius | WCSO – WIN Team |
| Charles Lovato | Washington County Deputy Medical Examiner |
| Investigator Brad Davis | WCSO – WIN Team |
| Detective Pat McNair | Beaverton PD – WIN Team |

**SUMMARY:**
I responded to the above location due to a suspected fatal heroin overdose. After I examined evidence at the scene and directed WIN team members to conduct surveillance at a Gresham apartment, I obtained a warrant to search a Gresham apartment for evidence related to the possession and distribution of heroin from the apartment.  The warrant was executed by myself and other WIN team members, and evidence related to the above crimes was seized.

**NARRATIVE:**
On March 29th, 2014, at approximately 1330 hrs, Sgt Schweigert advised me of an overdose investigation occurring at 19070 SW Blanton Street, Beaverton, Washington County, Oregon, and asked me to respond to the scene to make an assessment. I responded to the scene and arrived at about 1440 hrs. Upon arrival, I spoke with Deputy Cutler, who told me the deceased had been identified as Justin Delong. Deputy Cutler told me that Justin's roommate, Dustin Kilty DOB had found Justin deceased and had called Dispatch.

Washington County Deputy Medical Examiner Charles Lovato also responded to the scene and arrived as I was arriving to the residence. I entered a bedroom on the northwest corner of the residence and saw Justin's body was lying partially on his bed, facing up. Justin's head and upper torso were on the ground to the right

| REPORTING OFFICER **S. HEGLAND** | DPSST 46606 | PREC / DIV **E / DET** | SHIFT / DIST **D / WIN** | SUPV INT / DPSST |
|---|---|---|---|---|

000010

| CASE NO 14-504612 | CONTINUATION REPORT (*Cont.*) | PAGE / OF 2/ 5 |
|---|---|---|

¦ide of his bed, and legs were on the bed. ¦ saw Justin's nose and upper lip were covered in a whitish foam and saw blood spatter on his face and upper chest. I saw a small round metal tin containing brown residue and a small brown cotton ball was on the bottom shelf of the television stand, to the right of Justin's bed.  The bottom of the tin was covered in burn marks. A plastic twist-tie was wrapped around the base of the tin, functioning as a small handle. I saw a belt was on the ground in front of the television stand, and saw a needle on the bed. I saw a black Apple iPhone on the bed near Justin, and began to examine the contents of the phone as Deputy Medical Examiner Lovato examined Justin's body.

Deputy Medical Examiner Lovato told me he observed a fresh needle mark on Justin's right arm. I assisted Lovato in moving Justin's body fully onto the bed. Once Justin was off the ground, I saw an uncapped hypodermic needle on the ground where Justin's body had been. I also saw a small ziplock-type baggie that contained a small amount of a brown substance with a vinegar smell that I recognized as likely being Heroin.

I clicked the "home" button on the iPhone and swiped the screen to unlock the phone. I saw the phone did not have a passcode protecting its contents. I viewed the contacts and saw the phone number assigned to the phone is 503-985-9410. I examined the text messages stored on the phone, and read messages including the following strings of text:

To/From contact saved as "Morgan" with phone number 503-780-4883

| DATE/TIME: | FROM: | MESSAGE: |
|---|---|---|
| 3/28/2014 1730 hrs | Justin | Hey it's Justin, how r u? |
| 3/28/2014 1734 hrs | Justin | I want to hang out, I just live what the fuck out here in Aloha and I got no car. |
| (continued) | ‿ | I got money though, plenty and I wanna kick it and get fucked up. |
| (continued) | | Do u drive now or no? |

To/From contact saved as "Nick Post" with phone number 503-891-4169

| DATE/TIME: | FROM: | MESSAGE: |
|---|---|---|
| 3/28/2014 1935 hrs | Justin | ‿ Hey nick, it's Justin. U still up to the same shit? I need some shit and |
| (continued) | | I'm willing to pay extra if u can make it happen |
| 3/28/2014 2247 hrs | Nick | What happened? |
| 3/28/2014 2247 hrs | Justin | ‿I need to get loaded. The details r depressing man if u want them I'll give |
| (continued) | | them but the main thing is getting fucked up. If I can get to u do u have somethin? |
| 3/28/2014 2306 hrs | Justin | I think I just got a ride |
| 3/28/2014 2306 hrs | Nick | What are you looking for? |
| 3/28/2014 2312 hrs | Justin | ‿G  Black |
| 3/28/2014 2316 hrs | Justin | U got that? |
| 3/28/2014 2315 hrs | Nick | where are you |
| 3/28/2014 2317 hrs | Justin | Aloha, lol.  Got a ride but it would be an hour/hour and a half b4 I get to u. |
| (continued) | | U in Gresh? |
| 3/28/2014 2318 hrs | Justin | Should I head towards gresh? |
| 3/28/2014 2319 hrs | Nick | I'm doing one and leaving. I'll text you when I leave and it will take me one |
| (continued) | | hour to be back |
| 3/28/2014 2320 hrs | Justin | ‿ And I don't have n e thing so if possible please bring a clean. |
| 3/28/2014 2320 hrs | Justin | Ok but where should I head towards? Gresh? |
| 3/28/2014 2321 hrs | Justin | Someone is driving from SE to pick me up so I wanna get them on the way |
| 3/28/2014 2337 hrs | Nick | Ok fine yea |
| 3/29/2014 0014 hrs | Nick | So what's up? |
| 3/29/2014 0030 hrs | Justin | I'm coming, where am I going |
| 3/29/2014 0034 hrs | Nick | I'm broken down bro. Where are you exactly? |
| 3/29/2014 0034 hrs | Nick | Have to text. Speaker broken. |
| 3/29/2014 0035 hrs | Nick | I need a ride BAD |
| 3/29/2014 0037 hrs | Justin | Where u at? |
| 3/29/2014 0038 hrs | Nick | I5 south about exit 297 |
| 3/29/2014 0040 hrs | Nick | My wheel literally came off of my car |
| 3/29/2014 0044 hrs | Nick | ‿ Can you help? (I have your shut on me.) |
| 3/29/2014 0054 hrs | Justin | I'm trying to convince my ride Nick |
| 3/29/2014 0055 hrs | Nick | I'll pay him 40 |
| 3/29/2014 0056 hrs | Justin | Call Morgan she's got u |
| 3/29/2014 0058 hrs | Nick | She said no |
| UNSENT MESSAGE | Justin | ‿ I'm sorry Nick there wasn't shit I could do. My fuckin' ride did a shot of crank |
| (continued) | | and immediately following that he turned into a fuckin freak and I |
| (continued) | | was pretty much just along for the ride. |

| REPORTING OFFICER S. HEGLAND | DPSST 46605 | PREC / DIV E / DET | SHIFT / DIST D / WIN | SUPV INT / DPSST |
|---|---|---|---|---|

| CASE NO<br>14-504612 | | **CONTINUATION REPORT (*Cont.*)** | | PAGE / OF<br>3 / 5 |
|---|---|---|---|---|

**To/From contact saved as "Cat" with phone number 503-997-3547**

| DATE/TIME: | FROM: | MESSAGE: |
|---|---|---|
| 3/28/2014 2238 hrs | Justin | Is this still Cat? This is Justin |
| 3/28/2014 2239 hrs | Cat | Hey ya this is cat, Justin? Justin & Cody? |
| 3/28/2014 2239 hrs | Justin | Ya |
| 3/28/2014 2240 hrs | Cat | How are you? |
| 3/28/2014 2244 hrs | Justin | Good, I'm renting a house, I'm not hooked on the black, I got promoted at work, |
|  | (continued) | I'm still a mess but I guess it's better in a way. How bout u? |
| 3/28/2014 2246 hrs | Cat | Ugh I was doing good for a while, I relapsed about a month ago.  Started methadone |
|  | (continued) | today... I'm pregnant, hoping to get my life back on track. |
| 3/28/2014 2247 hrs | Cat | Good to hear you're not strung out  Do you still use every now and then or on subs? |
|  | (continued) | Or just completely clean? |
| 3/28/2014 2251 hrs | Justin | ~ I drink everyday but I haven't fucked with black for 3-4 months. I freaked out 2night and |
|  | (continued) | was trying to score cause I'm....Struggling but I couldn't. Prob for the best I guess. |
| 3/28/2014 2254 hrs | Cat | Ya probably, are you going to meetings or anything?  I started the methadone today |
|  | (continued) | but I'm not at a good dose yet so I'm still feeling shitty.  I have no |
|  | (continued) | money other wise I would have gotten something myself |
| 3/28/2014 2256 hrs | Justin | — I don't do meetings.  It drives me crazy.  I got a bunch of money but I'm in Aloha |
|  | (continued) | with no ride... I can pay for a ride and dope if there's n e way u think u could swing it |
| 3/28/2014 2303 hrs | Cat | Man that's deep, I could take my mom's car but the thing is, my dude and I had a |
|  | (continued) | falling out he fucked me out of $1700 for this car he was selling me and now won't |
|  | (continued) | take my calls. Do you ever talk to Morgan?  If I gave you her number she actually |
|  | (continued) | lives with him, see if she will hook you up and then I could come get you |
| 3/28/2014 2305 hrs | Justin | I have her # unless she has a new 1... |
| 3/28/2014 2306 hrs | Justin | Phone was off when I called |
| 3/28/2014 2306 hrs | Cat | She has a new one |
| 3/28/2014 2307 hrs | Justin | Shoot it  Dude isn't nick is it? |
| 3/28/2014 2307 hrs | Cat | Don't tell her I gave it to you, how much are you going to get like a gram?  Do you mind |
|  | (continued) | hooking me up with like a dub? |
| 3/28/2014 2307 hrs | Cat | No it's not nick. It's this guy Mike who was working with Jesse before he went to jail. |
|  | (continued) | Don't know if you met him |
| 3/28/2014 2311 hrs | Cat | Morgan Godvin ▮▮▮▮▮▮▮ |
| 3/28/2014 2313 hrs | Cat | Alright, you won't be able to stay over I'm living with my mom now but I can give you a |
|  | | ride home  if you can spot me gas so she doesn't know I drove that far.  Let me |
|  | (continued) | know if you get a hold of Morgan. |
| 3/28/2014 2315 hrs | Justin | ., Sounds good.  I'm tryin Morgan but I already got Nick,.. Just waiting for a "for sure" |
| 3/28/2014 2316 hrs | Cat | Tell her it will be like an hour before you can meet her |
| 3/28/2014 2324 hrs | Justin | — Nick says he can meet me in an hour, if that's cool with u, u should head out here |
| 3/28/2014 2325 hrs | Cat | OK and that's a for sure thing?! I would hate to go get you and him fall through. |
|  | (continued) | Where r we meeting him in an hour? |
| 3/28/2014 2326 hrs | Justin | I got Morgan to just now so we're good either way |
| 3/28/2014 2327 hrs | Cat | OK, what's your address? |
| 3/28/2014 2327 hrs | Justin | 19070 SW Blanton St, Aloha, OR |
| 3/28/2014 2329 hrs | Cat | ⌐ Should I bring my kit?  Google map says 36 min |
| 3/28/2014 2330 hrs | Justin | ⌐ Ya bring it I don't have n e thing n e more |
| 3/28/2014 2350 hrs | Cat | I'm on my way |

**To/From contact saved as "Morgan2" with phone number ▮▮▮▮▮▮**

| DATE/TIME: | FROM: | MESSAGE: |
|---|---|---|
| 3/28/2014 2314 hrs | Justin | Hey it's Justin. I got a ride can u hook up a G? |
| 3/28/2014 2324 hrs | Justin | Hello? |
| 3/28/2014 2325 hrs | Morgan2 | Yes |
| 3/28/2014 2326 hrs | Morgan2 | ▮▮▮▮▮▮▮▮▮▮ |
| 3/28/2014 2330 hrs | Justin | Cool, it'll be a while, coming from Aloha and can't leave for about 30. You'll be up ya? |
| 3/28/2014 2334 hrs | Morgan2 | Ya. |
| 3/28/2014 2335 hrs | Justin | Sweet, n e chance u still got my wallet 2? |
| 3/28/2014 2336 hrs | Morgan2 | Ya |
| 3/28/2014 2336 hrs | Justin | Awesome, see u in a lil bit |

| REPORTING OFFICER<br>S. HEGLAND | DPSST<br>46606 | PREC / DIV<br>E / DET | SHIFT / DIST<br>D / WIN | SUPV INT / DPSST |
|---|---|---|---|---|

000012  03/2011

| CASE NO<br>14-504612 | **CONTINUATION REPORT (*Cont.*)** | PAGE/OF<br>4/5 |
| --- | --- | --- |

To/From contact saved as "Morgan2" with phone number ▮▮▮▮▮▮▮▮ (continued from prior page)

| | | |
| --- | --- | --- |
| 3/29/2014 0018 hrs | Justin | On the way |
| 3/29/2014 0033 hrs | Morgan2 | How much can you pay |
| 3/29/2014 0036 hrs | Justin | 70-80? Is that cool? If not tell me |
| 3/29/2014 0037 hrs | Morgan2 | 80 |
| 3/29/2014 0038 hrs | Justin | K |
| 3/29/2014 0038 hrs | Morgan2 | ETA |
| 3/29/2014 0039 hrs | Justin | 10-12min |
| 3/29/2014 0040 hrs | Morgan2 (continued) | What's the situation are you with a bunch of people or what because that is my apartments address and I have a traffic issue and no strangers allowed inside so... |
| 3/29/2014 0042 hrs | Justin | I'll just get dropped off in the complex and have u meet me? |
| 3/29/2014 0045 hrs | Justin | 3min |
| 3/29/2014 0047 hrs | Morgan2 (continued) | Get dropped off at entrance have them park on street and walk to the back corner number 128 |
| 3/29/2014 0048 hrs | Morgan2 | Tap tap a tappa tap. Knock quietly and non cop knock |

Deputy Medical Examiner Lovato told me that Justin's body and the items present at the scene were consistent with a death from a Heroin overdose, and that Justin's autopsy would likely be scheduled for Monday, March 31st, at 9:00 a.m. I seized the following items from Justin's bedroom: a black iPhone, described above, found on the bed near Justin's body; a Motorola cell phone found in a backpack on the floor in Justin's bedroom; 3 syringes; a plastic baggie with brown substance, later weighed at 0.2 grams net and field-tested positive for Heroin by Detective McNair; $581.00 in US currency, found on the bed near Justin's body; aluminum foil, and the above-described small round metal tin containing brown residue. Deputy Cutler also included a tin of chewing tobacco and a lighter in the items seized. These items were all later entered into evidence on WCSO property receipt number 138350 as items 1 through 8.

Investigator Crecelius and I spoke with Justin's roommate, Dustin Kilty, who had found Justin deceased and had called 9-1-1. Dustin told me he was away from home last night (3/28/2014) from about 1900 hrs until about 2200 hrs, and that when he left at 1900 hrs, Justin was watching a television show on the computer in the living room. Dustin told me he did not hear Justin leave home or return home in the middle of the night, but that he could have slept through Justin leaving. Dustin told me Justin had been "clean" from drugs for about 8 months, and that Justin seemed to be doing well. Dustin told me he does not use drugs himself. Dustin said he woke up today (3/29/2014) at about noon, started making breakfast, and went to wake Justin when he did not come out of his room for breakfast. Dustin said he found Justin unresponsive in Justin's room, and called 9-1-1. Dustin told me he and Justin have another roommate, who is the son of their landlord, and said that roommate left on the morning of 3/28/2014 for California and has not yet returned. Dustin consented to a search of his own room and the common areas of the home. I looked through these areas and saw no drugs or drug paraphernalia.

I checked police records and saw that phone number ▮▮▮▮▮▮▮, assigned to "Cat" in Justin's phone contacts, is associated with Catherine Elizabeth Ison DOB: 1/13/1988, Oregon Driver License number 7163803. As of this writing, I have not yet interviewed Catherine Ison. I saw that phone number ▮▮▮▮ is associated with Morgan Elizabeth Godvin DOB ▮▮▮▮▮▮▮▮▮▮. I saw that phone number 503-891-4169 is associated with Nicholas Weston Post, ▮▮▮▮▮▮▮▮▮, Oregon Driver License number 9663978. I checked recent police calls for service in Washington County, Oregon, and found an incident from 12/23/2013 at 9301 SW Sagert Street, Tualatin, Oregon. I saw that during this incident, Morgan Godvin DOB: 8/23/1989 and Nicholas Post DOB: 1/21/1988 were contacted at that location when Morgan's mother, Helen Godvin, was found deceased at that location.

March 29th, 2014, I had members of the WIN Team conduct surveillance at ▮▮▮▮▮▮▮▮, ▮▮▮▮▮▮▮▮, Multnomah County, Oregon. WIN Team Detective Pat McNair told me that

| REPORTING OFFICER<br>S. HEGLAND | DPSST<br>46606 | PREC / DIV<br>E / DET | SHIFT / DIST<br>D / WIN | SUPV INT / DPSST |
| --- | --- | --- | --- | --- |

| CASE NO<br>14-504612 | **CONTINUATION REPORT (Cont.)** | PAGE / OF<br>5 / 5 |
|---|---|---|

...urveillance units saw a Hyundai with Oregon plate D038147 arrived at ▮▮▮▮▮▮▮▮▮▮▮, driven by an unidentified white male adult.

Detective McNair told me the male went into apartment 128 at that location, and that an unidentified Hispanic female adult then left apartment 128, retrieved a red shoebox from the Hyundai, and returned to apartment 128. I checked Oregon plate D038147, and saw it is registered to a 1992 Subaru to Morgan Elizabeth Godvin ▮▮▮▮▮▮▮▮ I checked DMV records for other vehicles registered to Morgan Elizabeth Godvin ▮▮▮▮▮, and found a 1985 Pontiac with Oregon plate ▮▮▮▮▮▮ and a ▮▮▮▮▮▮▮▮ with Oregon plate

WIN Team Detective JC Crecelius, whom I know to be a sworn police officer, then used Justin's phone to send a series of text messages to Morgan. Det. Crecelius sent and received the following messages using Justin's phone:

To/From contact saved as "Morgan2" with phone number 503-200-8093

| | | | |
|---|---|---|---|
| 3/29/2014 1630 hrs | Justin | Hey, are you going to be around later? |
| 3/29/2014 | Morgan2 | Yeah |
| 3/29/2014 | Justin | Cool, Im in Portland with no ride but I'd like to get the same as yesterday |
| 3/29/2014 | Justin | Hey, any chance you could come to me? I'll pay an extra 20 |
| 3/29/2014 | Morgan2 | No |
| 3/29/2014 | Justin | My friend will bring me if we can get 2, I have the money. |
| 3/29/2014 | Morgan2 | Yeah |

WIN Team Detective Brad Davis told me he went to ▮▮▮▮▮▮▮▮▮▮▮, Multnomah County, Oregon and described the apartment location and appearance to me. Detective McNair told me that between 1630 and 1945 hrs, WIN Team surveillance units had observed five separate persons ...ve at ▮▮▮▮▮ ▮▮▮▮▮ and depart after staying for only several minutes. Detective McNair also told me that a male from within ▮▮▮▮▮▮▮▮▮▮▮ had also left the apartment at least three times and had then returned after having only been gone for several minutes.

I applied for and was granted a warrant to search the residence at ▮▮▮▮▮▮▮▮▮▮▮, ▮▮▮▮▮▮▮▮▮▮▮ The warrant was reviewed and signed by Washington County Circuit Court Judge Oscar Garcia at 2040 hrs.

**ACTION RECOMMENDED:**

The contents of the cell phones seized from Justin's bedroom have not yet been downloaded and analyzed; additional reports to follow.

Please forward to the Multnomah County District Attorneys' Office for review with related case 14-504622 for potential criminal charges for Morgan Godvin and Michael Rosa.

Investigation continues.

| REPORTING OFFICER<br>S. HEGLAND | DPSST<br>46606 | PREC / DIV<br>E / DET | SHIFT / DIST<br>D / WIN | SUPV INT / DPSST |
|---|---|---|---|---|

# EXHIBIT 3



# HILDA SILVIA VILLALOBOS PÉREZ

PRIVADA DE AHUATLAN, No 5; TLALTENANGO, CUERNAVACA, MORELOS 62170

hildavillalobosoperez@hotmail.com

5543596913 / (777)3139391

## RESÚMEN:

El estudio de la licenciatura en Historia y la licenciatura en Criminología, me ha permitido poder fusionar ambas disciplinas. La investigación, en el caso de la Ciencia forense, es fundamental poder recurrir a planos que requieran una base científica para poder llegar así, mediante un buen método, a una verdad histórica.

La perfilación criminal, así como el estudio de la Maestría en Investigación Criminal son áreas que se conforman de diferentes disciplinas que, al interactuar entre sí, podemos llevar a cabo un trabajo integral.

Asesoría para la correcta aplicación de una óptima metodología en la elaboración de trabajos de investigación, organización de fuentes, aplicación de referencias digitales, y el uso de normas internacionales para ese efecto.

## HISTORIA LABORAL

### ASESORÍA EN MATERIA DE: VICTIMOLOGÍA, CRIMINOLOGÍA Y CRIMINALÍSTICA, COMO AUXILIAR EN EL TRIBUNAL DEL VALLE DE TOLUCA.

**PERIÓDO: (Enero 2019-a la fecha)**
ESTADO DE MÉXICO

### PRODUCCIÓN GENERAL
**PERIÓDO: (Julio 2017-a la fecha)**
GACETA FORENSE-REVISTA DIGITAL BIMESTRAL

### ELABORACIÓN DE CURSOS DE CAPACITACIÓN
**PERIÓDO: (febrero 2011-a la fecha)**
**VIPCAR-Cuernavaca, Morelos**
**STPS:** VIP-110705-7D3-0013

**DGENAM-SEP**

**PERIÓDO:(2008-2010)**

Participación en el mapa curricular en la Licenciatura en Educación Secundaria para las materias: (Programa para la transformación y el fortalecimiento académico de las escuelas normales)

La educación en el desarrollo histórico de México.

Seminario de tema selectos de Historia

Atención educativa a adolescentes en situaciones de riesgo.

**CONSAR**

**PERIÓDO:(2005-2010)**

Asesoría y venta de servicios financieros, en diferentes instituciones.

**NÚMERO: 0505064591**

**PONENTE "RELIGIÓN Y MUERTE"**

**CURSO**: MEDICINA LEGALY PATOLOGÍA FORENSE

UNIVERSIDAD NACIONAL AUTONOMA DE MÉXICO

1997

# FORMACIÓN UNIVERSITARIA:

## INSTITUTO SUPERIOR DE CIENCIAS DE CIUDAD JUAREZ

Ciudad Juárez, Chihuahua

MAESTRIA: **CRIMINALÍSTICA, CRIMINOLOGÍA E INVESTIGACIÓN CRIMINAL (CCI)**

CURSANDO

## UNIVERSIDAD MESOAMERICANA

Cuernavaca, Morelos

LICENCIATURA: **CRIMINOLOGÍA**

GENERACIÓN 2018

PASANTE-CERTIFICADO TOTAL (9.2)-TÍTULO EN TRAMITE

## UNIVERSIDAD NACIONAL AUTÓNOMA DE MÉXICO

Ciudad de México

LICENCIATURA: **HISTORIA**

MIEMBRO DE LA GENERACIÓN 1993

CERTIFICADO

# FORMACIÓN CURRICULAR:

## COLEGIO INTERNACIONAL DE INVESTIGADORES FORENSES SC
## ACADEMIA INTERNACIONAL DE INVESTIGADORES FORENSES AC
**CONGRESO:** "INVESTIGACIÓN FORENSE Y COMPORTAMIENTO CRIMINAL"
**DURACIÓN:** 16 HRS
SEPTIEMBRE DEL 2019

## COLEGIO INTERNACIONAL DE INVESTIGADORES FORENSES SC
## ACADEMIA INTERNACIONAL DE INVESTIGADORES FORENSES AC
**JORNADAS:** "CRIMINOLOGÍA, PERFILACIÓN CRIMINAL E INVESTIGACIÓN FORENSE"
**DURACIÓN:** 10 HRS
JUNIO DEL 2019

## CENTRO NACIONAL DE CIENCIAS JURIDICAS, FORENSES DEL ANÁLISIS DE LA VÍCTIMA S.C.
**TALLER:** "PERFILACIÓN CRIMINAL"
**DURACIÓN:** 10 HRS
ENERO DEL 2019

## INSTITUTO SUPERIOR DE CIENCIAS DE CIUDAD JUAREZ (ISCCJ)
## COLEGIO INTERNACIONAL DE INVESTIGADORES FORENSES S.C.
## ACADEMIA INTERNACIONAL DE INVESTIGADORES FORENSES A.C.
**DIPLOMADO:** "PERFILACIÓN CRIMINAL"
**METODOLOGÍA:** ANÁLISIS FORENSE DE INVESTIGACIÓN CRIMINAL
**DURACIÓN:** 120 HRS
DICIEMBRE DEL 2018

## INTERNATIONAL ASSOCIATION OF FORENSIC INVESTIGATORS LLC
**DIPLOMATE:** CRIMINAL PROFILING
**METHOD:** FORENSIC CRIMINAL INVESTIGATION ANALYSIS
**DURACIÓN:** 120 HRS
DICIEMBRE 2018

## COLEGIO INTERNACIONAL DE INVESTIGADORES FORENSES S.C.
## ACADEMIA INTERNACIONAL DE INVESTIGADORES FORENSES A.C.
## INTERNATIONAL ASSOCIATION OF FORENSIC INVESTIGATORS LLC
**SEMINARIO:** "EN LA MENTE DEL ASESINO"
**DURACIÓN:** 16 HRS.
NOVIEMBRE 2018

## UNIVERSIDAD MESOAMERICANA

**DIPLOMADO:** "PSICOLOGÍA FORENSE"
**DURACIÓN:** 125HRS
NOVIEMBRE 2018

## UNIM COLEGIO UNIVERSITARIO

**CONFERENCIA:** "ELABORACIÓN DEL PERFIL CRIMINOLÓGICO"
IMPARTIDA POR EL MTRO. LUIS ANTONIO NAVARRO ALONSO
JULIO 2018

## INSTITUTO DE ANÁLISIS FORENSE E INVESTIGACIÓN CRIMINAL A.C. (IAFIC)

**TALLER:** "TALLER TEÓRICO PRÁCTICO DE BALÍSTICA FORENSE Y TIRO DEPORTIVO"
ABRIL 2018

## UNIVERSIDAD NACIONAL AUTÓNOMA DE MÉXICO

**CERTIFICADO:** "ASESORIA EN ELABORACIÓN DE TESIS"
2018

## UNIVERSIDAD MESOAMERICANA

. -ACADEMIA INTERNACIONAL DE INVESTIGADORES FORENSES A.C.
**CONFERENCIA** "APLICACIÓN DE LA CRIMINOLOGÍA A LA INVESTIGACIÓN FORENSE"
MARZO 2017
. - "VII CONGRESO ACADÉMICO EN CIENCIAS FORENSES"
  MAYO 2017
. - "ESPECIALIDAD EN GRAFOSCOPÍA"
  **DURACIÓN:** 36 HRS.
  AGOSTO 2016
. - "CURSO TALLER DE BALÍSTICA INTERNA E IDENTIFICATIVA"
  **DURACIÓN:** 20HRS.
  JULIO 2015
. - "CONGRESO ACADEMICO DE CIENCIAS FORESES"
  MAYO 2015

## SOCIEDAD PARA EL FORTALECIMIENTO Y EMPRENDIMIENTO PARA LA MUJER S.C.

**CONFERENCIA:** "PSICOPATÍA Y ASESINOS SERIALES"
SEPTIEMBRE 2016

## INSTITUTO DE CAPACITACIÓN INTEGRAL Y PERSONAL

**"SEMINARIO** DE ANALISIS CONDUCTUAL DE ASESINOS EN SERIE"
**OCTUBRE 2014**

## UNIVERSIDAD NACIONAL AUTÓNOMA DE MÉXICO

**COMPRESIÓN DE LECTURA EN INGLES**
**APROBADO**
**MAYO 2008**

## UNIVERSIDAD NACIONAL AUTÓNOMA DE MÉXICO

**DIPLOMADO** "TEORÍA E HISTORIA DE LAS RELIGIONES"
**1996**

## ASOCIACIONES A LAS QUE PERTENECE:

**COLEGIO INTERNACIONAL DE INVESTIGADORES FORENSES S.C.**
**ACADEMIA INTERNACIONAL DE INVESTIGADORES FORENSES A.C.**
**INTERNATIONAL ASSOCIATION OF FORENSIC INVESTIGATORS LLC**



On the recommendation of the Board of Professional Certification, The International Association of Forensic Investigators (IAFI) confers upon:

## HILDA SILVIA VILLALOBOS PEREZ

the status of

## DIPLOMATE

In the International Association of Forensic Investigators (DIAFI), with all the rights and privileges pertaining thereto. This serves as certification that the member has achieved an advanced level of knowledge, skill, and ability in the subject and practice of Criminal Profiling through the Forensic Criminal Investigation Analysis Method as demonstrated by relevant education or prior investigative experience, 40+ hours of workshops from IAFI approved instructors, case mentorship, and the successful completion of the IAFI Criminal Profiling Board Examination.

Conferred this 9th day of December 2018:

**Det. John J. Baeza, NYPD Ret.**
**IAFI Board of Professional Certification – CI CP**

**Manuel Adolfo Esparza**
**President, IAFI**



**UNIVERSIDAD**



**MESOAMERICANA**

CAMPUS MORELOS

*Otorga la presente*

## Carta de Pasante

## A: VILLALOBOS PEREZ HILDA SILVIA

*En virtud de haber cursado y aprobado la totalidad de los créditos en la Licenciatura en Criminología, dentro de la generación 2014-2018.*

*Cuernavaca, Mor. a 2 de marzo de 2018.*

*Dr. Salvador Sergio Calva Morales*

*Rector*



**INSTITUTO SUPERIOR DE CIENCIAS DE CIUDAD JUAREZ**

A TRAVÉS DEL POSGRADO EN

CRIMINALÍSTICA, CRIMINOLOGÍA E INVESTIGACIÓN CRIMINAL

COLEGIO INTERNACIONAL DE INVESTIGADORES FORENSES S.C.

ACADEMIA INTERNACIONAL DE INVESTIGADORES FORENSES A.C.

INTERNATIONAL ASSOCIATION OF FORENSIC INVESTIGATORS LLC

OTORGAN EL PRESENTE

# DIPLOMA

## A: HILDA SILVIA VILLALOBOS PÉREZ

POR HABER CONCLUIDO Y ACREDITADO EL

## DIPLOMADO EN PERFILACIÓN CRIMINAL

**MÉTODOLOGÍA ANÁLISIS FORENSE DE INVESTIGACIÓN CRIMINAL**

VALOR CURRICULAR DE 120 HORAS

IMPARTIDO DEL 10 DE SEPTIEMBRE AL 09 DE DICIEMBRE DE 2018
POR LOS CC. MAESTRO HÉCTOR HAWLEY MORELOS, LIC. MANUEL ADOLFO ESPARZA NAVARRETE,
MTRO. FERNANDO RAMIREZ MENDOZA, MTRO. JESUS VACA · CORTES Y DRA. LILIA BERENICE ROMERO SANCHEZ

CIUDAD DE MÉXICO, A 09 DE DICIEMBRE DE 2018

POR EL POSGRADO EN CRIMINALISTICA
CRIMINOLOGIA E INVESTIGACIÓN CRIMINAL DEL
INSTITUTO SUPERIOR DE CIENCIAS DE CIUDAD JUAREZ

LIC. MANUEL ADOLFO ESPARZA NAVARRETE
DIRECTOR DEL POSGRADO

POR LA INTERNATIONAL ASSOCIATION
OF FORENSIC INVESTIGATORS, LLC
EL COLEGIO Y LA ACADEMIA DE INVESTIGADORES FORENSES

MTRO. HÉCTOR HAWLEY MORELOS
VICEPRESIDENTE DE OPERACIONES Y PROFESIONALIZACIÓN







**UNIVERSIDAD**

**MESOAMERICANA**

**CAMPUS MORELOS**

# Universidad Mesoamericana Campus Morelos

## OTORGA EL PRESENTE



**A:**     **Villalobos Pérez Hilda Silvia**

Por haber concluido satisfactoriamente el diplomado:
"PSICOLOGÍA FORENSE"
Con una duración de 125 horas, del 13 de Abril al 21 de Septiembre de 2018,
con número de registro 17DAP38415 ante la Secretaría de
Educación del Estado de Morelos

Cuernavaca, Morelos a 21 de Noviembre de 2018

MTRA. LAURA ELBA RUIZ VELASCO RIVAS
DIRECTORA GENERAL
DE LA UNIVERSIDAD MESOAMERICANA
CAMPUS MORELOS

LIC. RENÉ FUJIWARA APODACA
DIRECTOR GENERAL DE EDUCACIÓN
MEDIA SUPERIOR Y SUPERIOR



**COLEGIO INTERNACIONAL DE INVESTIGADORES FORENSES**
A TRAVÉS DE LA
**ACADEMIA INTERNACIONAL DE INVESTIGADORES FORENSES A.C**
Y EN COLABORACIÓN CON
**INTERNATIONAL ASSOCIATION OF FORENSIC INVESTIGATORS LLC**

OTORGAN LA PRESENTE

# CONSTANCIA

### A: HILDA SILVIA VILLALOBOS PÉREZ

POR SU ASISTENCIA AL CONGRESO

## INVESTIGACIÓN FORENSE Y COMPORTAMIENTO CRIMINAL

VALOR CURRICULAR DE 16 HORAS

CIUDAD DE MÉXICO, 01 DE SEPTIEMBRE DE 2019

COLEGIO INTERNACIONAL DE INVESTIGADORES FORENSES, SC
ACADEMIA INTERNACIONAL DE INVESTIGADORES FORENSES, AC
INTERNATIONAL ASSOCIATION OF FORENSIC INVESTIGATORS, LLC

LIC. MANUEL ADOLFO ESPARZA NAVARRETE
PRESIDENTE

MTRO. HÉCTOR RAWLEY MORELOS
VP DE OPERACIONES Y PROFESIONALIZACION







**LA FACULTAD DE MEDICINA DE
LA UNIVERSIDAD NACIONAL AUTONOMA DE MEXICO**

Otorga la presente

# CONSTANCIA

a la

## HIST. HILDA SILVIA VILLALOBOS PEREZ

Por su participación como profesor asociado del curso.

### *MEDICINA LEGAL Y PATOLOGIA FORENSE*

Que se llevó a cabo el  7, 14, 21, 28 de noviembre y 5 de diciembre de 1997

Impartido por el

**DEPARTAMENTO DE MEDICINA FAMILIAR DE ESTA FACULTAD**

Su contribución a la actualización del conocimiento de la ciencia,
coincide con los grandes propósitos de la Universidad, a lo cual
damos amplio reconocimiento.

**"POR MI RAZA HABLARA EL ESPIRITU"**

**DR. LUIS PEREGRINA PELLON**
COORDINADOR DE
EDUCACION MEDICA CONTINUA




EL C... ...STIGADORES FORENSES SC

ACAD... ...VESTIGADORES FORENSES AC

...PRESENTE

# CONSTANCIA

A HILDA SILVIA VILLALOBOS

POR SU PARTICIPACIÓN EN LAS

## JORNADAS DE CRIMINOLOGÍA, PERFILACIÓN CRIMINAL E INVESTIGACIÓN FORENSE

VALOR CURRICULAR 10 HORAS

CIUDAD DE MÉXICO 23 DE JUNIO DE 2019

LIC. MANUEL ADOLFO ESPARZA NAVARRETE
PRESIDENTE
COLEGIO INTERNACIONAL DE INVESTIGADORES FORENSES
ACADEMIA INTERNACIONAL DE INVESTIGADORES FORENSES

# CONSTANCIA

**A:**    **HILDA SILVIA VILLALOBOS PÉREZ**

## Por su participación en el taller de
## "Perfilación Criminal"

Con una duración de 10 horas

En las instalaciones del **Centro Nacional de Ciencias Jurídicas, Forenses del Análisis de la Víctima S.C**

# C E J U F

Se llevo a cabo el día 26 de enero de 2019



**Lic. Joseline L. Miranda Cerv...**
**Coordinación Académica de ...**

# EXHIBIT 4

# CURRICULUM VITAE

## *1.- DATOS GENERALES*

NOMBRE: **FRANCISCO JESUS VILLALOBOS PEREZ**
SEXO: **MASCULINO**
FECHA DE NACIMIENTO: 3 DE SEPTIEMBRE DEL 1957
LUGAR DE NACIMIENTO MEXICO, DISTRITO FEDERAL
NACIONALIDAD: MEXICANO
ESTADO CIVIL: CASADO
DOMICILIO: LOMA ALEGRIA 138, LOMAS DEL SOL, CUERNAVACA, MORELOS.
TELEFONO: 777.3801839 Y TELEFONO CELULAR 7775140637

PROFESION: MEDICO CIRUJANO
ESPECIALIDADES: ANATOMOPATOLOGO Y MEDICO LEGISTA

REGISTROS DE CERTIFICACION:
ANATOMOPATOLOGO COMMAP: 0631
MEDICINA LEGAL Y FORENSE COMMLF 1064
RFC: VIPF 570903 E42

## *2.- ESTUDIOS PROFESIONALES*

- EDUCACION SUPERIOR: FACULTAD DE MEDICINA DE LA UNAM 1976-1980
- INTERNADO ROTATORIO: HOSPITAL DE LA SECRETARIA DE HACIENDA Y CREDITO PÚBLICO ACTUALMENTE HOSPITAL TACUBA ISSSTE    1980
- SERVICIO SOCIAL: DEPARTAMENTO DE MEDICINA LABORAL DE LA UNAM CON SEDE EN LA VIDRIERA MEXICO GRUPO VITRO MEXICO D.F    1981

## *3.- IDIOMAS*

INGLES 90%................................................................ (HABLO Y ESCRIBO)

## *4.- ACTIVIDADES ACADEMICAS*

- PROFESOR ADJUNTO DE PATOLOGIA ENEP ZARAGOZA UNAM    1977-1980
- PROFESOR TITULAR DE FISIOLOGIA Y PATOLOGIA UNITEC    1979-1985
- PROFESOR TITULAR DE PATOLOGIA BUCAL  UNITER    1979-1980
- PROFESOR TITULAR DE PATOLOGIA HOSPITAL ABC LONDRES    1980-1981
- PROFESOR TITULAR DE FARMACOLOGIA UAEM FAC MED    1986-1988
- PROFESOR TITULAR DE MEDICINA LEGAL UAEM FAC MED    1986-1988
- PROFESOR TITULAR DE PATOLOGIA UAEM FAC MED    2001-2003
- PROFESOR TITULAR DE FISIOLOGIA UAEM FAC MED    2001-2003
- PROFESOR TITULAR DE MEDICINA LEGAL EN LA MAESTRIA DE CIENCIAS PERICIALES DE LA UNIVERSIDAD JURIDICA DE MORELOS  2011-A LA FECHA

## 5.- ASISTENCIA A CURSOS Y CONGRESOS

- "MANEJO DEL ESTRÈS" PGJ EDOMEX                    MAYO 1987
- "PRIMER CONGRESO NACIONAL DE MEDICINA FORENSE
  CRIMINOLOGIA Y CRIMINALISTICA" PGJ TABASCO        AGOSTO 1987
- SEMINARIO DE PATOLOGÌA RENAL IMIN                 ABRIL 1994

## 6.- PONENCIAS Y COMUNICACIONES EN CURSOS Y CONGRESOS

- "PATOLOGIA FORENSE" GUYAQUIL  ECUADOR            JUNIO 1982
- "PATOLOGÌA QUIRÙRGICA" UAEM                      JUNIO 1987
- "ORGANIZACIÒN DEL SEMEFO EN EL EDOMEX" ISSTE EDO. MEX    JULIO 1987
- "ESTUDIO MEDICO FORENSE DE LA MUERTE SÙBITA" ISSSTE TEXCOCO
                                                  DICIEMBRE DE 1987

- ISRAELI DENTAL ASOCIATION "ASPECTOS BASICOS DE MEDICINA FORENSE"
                                                  FEBRERO DE 1988

- "PATOLOGIA FORENSE "SIMPOSIUM DR. JOSÈ SOL CASAO"    JULIO 1988
- "MEDICINA FORENSE BÀSICA"PGJ MORELOS               OCTUBRE 1988
- IMPARTICION DEL CURSO MONOGRÀFICO DE MEDICINA FORENSE
                                                  DICIEMBRE 1988

- "INTRODUCCIÒN A LA MEDICINA FORENSE" PGJ QRO     FEBRERO 1990
- "PROBLEMAS LEGALES EN LA ATENCIÒN MÈDICA DE URGENCIA MÈDICA
  MOVIL                                             OCTUBRE 1990

- "MEDICINA LEGAL PARA EL MÈDICO GENERAL" AMFMAC     JULIO 1995
- "FEOCROMOCITOMA" ISSSTE HRALM –ISSTE              NOVIEMBRE 1995
- "MEDICINA FORENSE" PARA EL TÈCNICO LABORATORISTA ESC.TEC.LAB
  UAEM                                              JULIO 1995

- "MEDICINA LEGAL Y CRIMINALISTICA" CEU              AGOSTO 1999
- "MEDICINA LEGAL Y CRIMINALISTICA" ISSSTE UAG"     NOVIEMBRE 1999
- "MEDICINA LEGAL Y CRIMINALISTICA" UNIVERSIDAD AMERICANA DE
  MORELOS                                           DICIEMBRE 1999

- "MEDICINA LEGAL SEXOLÒGICA" ISSSTE PGJ GUERRERO    MARZO 2000
- "RELACION DE LA MEDICINA LEGAL CON LA PATOLOGÌA FORENSE" UNAM
                                                  ABRIL 2000

- "MEDICINA LEGAL Y CRIMINALISTICA" PGJ GRO UAG- ISSSTE    MAYO 2000
- "TANATOLOGÌA FORENSE" INACIPE PGJ NAYARIT          OCTUBRE 2000
- MEDICINA FORENSE SNP PGJ- GUERRERO                NOVIEMBRE 2000
- "PATOLOGÌA FORENSE" ACADEMIA MEXICANA DE CIENCIAS FORENSES
                                                  AGOSTO 2001

- "PATOLOGÌA FORENSE" PGJ GUERRERO C.G. C. P         MAYO 2002
- "LOS PERITOS DEL PODER JUDICIAL DEL ESTADO DE MEXICO Y SU MARCO
  JURIDICO                                          OCTUBRE 2003

## 7.- ASOCIACIONES

MIEMBRO TITULAR Y FUNDADOR DE LA SOCIEDAD MEXICANA DE MEDICINA
FORENSE Y CRIMINALISTICA                                              1982

## 8.- TRABAJOS Y PUBLICACIONES (EN PREPARACION)

- "PATOLOGIA FORENSE PRACTICA"                                    2012
- "RESPONSABILIDAD PROFESIONAL Y ARBITRAJE MEDICO"                2012
- "CERTIFICACION MEDICO LEGAL DEL SUJETO INTOXICADO"             2012

## 9.- ESPECIALIDADES

**ANATOMIA PATOLOGICA:**
MEDICO RESIDENTE DEL INSTITUTO NACIONAL DE LA NUTRICION SALVADOR
ZUBIRAN (R-1-R-2) Y HOSPITAL GENERAL ADOLFO LOPEZ MATEOS (R-3) DEL ISSSTE
MEXICO D.F.
CERTIFICACION POR EL CONSEJO MEXICANO DE MEDICOS
ANATOMOPATOLOGOS CON EL NÚMERO 0631

**MEDICINA LEGAL Y FORENSE:**
CERTIFICACION POR EL CONSEJO MEXICANO DE MEDICINA LEGAL Y FORENSE
CON EL NÚMERO 1064

## 10.- PRÁCTICA PROFESIONAL Y NOMBRAMIENTOS

- COORDINADOR DE CIENCIAS BASICAS UNITEC                    1981-1985
- JEFE DEL SERVICIO MEDICO FORENSE EN EL ESTADO DE MEXICO   1986-1989
- JEFE DEL SERVICIO MEDICO FORENSE EN EL ESTADO DE MORELOS  1989-1990
- MEDICO ADSCRITO AL BCO.DE SANGRE HOSP CENTRAL NTE PEMEX 1991-1993
- MEDICO LEGISTA ADSCRITO AL SERVICIO DE PATOLOGIA DEL HOSPITAL
- GENERAL BALBUENA DEPARTAMENTO DEL DISTRITO FEDERAL        1991

- JEFE DEL SERVICIO DE PATOLOGIA DEL HOSP DEL NIÑO MORELENSE  1998
- MEDICO LEGISTA ADSCRITO AL SERVICIO MEDICO FORENSE DE LA
  COORDINACION DE SERVICIOS PERICIALES DE LA PROCURADURIA GENERAL
  DE JUSTICIA DEL ESTADO DE MORELOS                         1993-2011

- PERITO MEDICO LEGISTA DEL TRIBUNAL SUPERIOR DE JUSTICIA DEL
  ESTADO DE MEXICO                                          1991-2010

- PERITO MEDICO PATOLOGO DEL TRIBUNAL SUPERIOR DE JUSTICIA DEL
  ESTADO DE MORELOS                                 1992- A LA FECHA

456 - Y

# La Universidad Nacional Autónoma de México

otorga a

## Francisco Jesús Villalobos Pérez

el grado de

## Especialista en Anatomía Patológica

en atención a que demostró tener hechos los estudios conforme a los planes autorizados por el Consejo Universitario y haber sido aprobado en el examen de grado que sustentó el día 4 de marzo de 2015 según constancias archivadas en la misma Universidad.

Por mi Raza hablará el Espíritu

Dado en la Ciudad de México, el día 4 de mayo de 2017

El Secretario General

Dr. Leonardo Lomelí Vanegas

El Rector

Dr. Enrique Graue Wiechers

# EL CONSEJO MEXICANO DE MEDICOS ANATOMOPATOLOGOS, A. C.

Certifica que

## el DR. FRANCISCO VILLALOBOS PEREZ

ha cumplido con los requisitos que la confirman
como Especialista en Anatomía Patológica
y en cumplimiento de las disposiciones y reglamentos respectivos,
se expide el presente

# DIPLOMA

que    acredita como Miembro Titular del Consejo

PRESIDENTE

VICEPRESIDENTE

SECRETARIO-TESORERO

VOCAL

VOCAL

VOCAL

# EXHIBIT 5

# Oregon State Police Forensic Services Request

05MAY14 85

## State Medical Examiner Request Form

Case# 14M-000408  # 001    age    of

| County Medical Examiner Office | ☐ Restrict This Case | Draw 03-30-14    Dr. LVL | Sub # |
|---|---|---|---|
| UCMEO | ☐ Rush Case - Reason & Date Due | | |

State ME # 14-0751

☐ Additional Info Only
☐ Previous Specimen Submitted

Delong, Justin
Washington    14-0751

Forensic Pathologist: ☐ KG ☐ CN ☒ LL ☐ CY ☐ JO ☐ DD ☐ Other _____

County WASHINGTON

Last DELONG    First JUSTIN    Middle

☒ Male ☐ Female    DOB 10/14/87    Date of Death 3/29/14
☐ Other ☐ Unknown

Motor Vehicle Accident? ☐ Yes ☒ No

Investigating County ME (Physician) ME Investigator LARRY V. LEWMAN

Phone # of County ME or DME    Email of County ME or DME

| Lab Exhibit | Agency Exhibit | | | | Exam Requested (Please include report on all physical evidence) |
|---|---|---|---|---|---|
| 2 | ☒ Red Top Tube ☐ Blood ☒ Urine ☐ Vitreous | Qty | 1 | | **Blood Alcohol** |
| | ☐ Red Top Tube ☐ Blood ☐ Urine ☐ Vitreous | Qty | | | ☒ Blood Alcohol |
| 1-B | ☒ Gray Top Tube ☒ Blood | Qty | 2 | | **Toxicology** |
| | ☐ Gray Top Tube ☐ Blood | Qty | | | ☒ Blood Tox |
| | ☐ Other _____ | | | | ☐ Co-oximetry |
| | ☐ Blood ☐ Urine ☐ Vitreous | | | | ☐ Electrolytes/Glucose |
| | ☐ Other _____ | Qty | | | ☒ Urine Tox |
| | | | | | ☐ Other _____ |
| | ☐ Other _____ | | | | ☐ Other _____ |
| | ☐ Blood ☐ Urine ☐ Vitreous | | | | ☐ Other _____ |
| | ☐ Other _____ | Qty | | | ☐ Other _____ |

Site of blood draw;    (peripheral blood preferred)
☒ Femoral ☐ Subclavian ☐ Cardiac
☐ Other _____

**Suspected Agents**
#1. suspected drug screen
#3.    #4.

Drawn by: _____    Date Drawn 3/29/14

Case Information (Brief Circumstances of Death)

Suspected IV drug abuse (heroin)

| Submitted to Lab By (Please Print) | Submitted to Lab By (Signature) | Date 3/31/14 |
|---|---|---|

Submitted via
☒ ME Specimen Closet
☐ Other _____

LAB USE ONLY Evidence Packaging Description – Storage Location
One (1) HSI Bub - tox fridge

Date / Time 4/4/14  915

Lab Staff Lisa L. Morrow

| Evidence Transfer or Referral Received From: | Via: ☐ UPS | Date/Time | Lab Staff | ☐ Items | ☐ Submission |
|---|---|---|---|---|---|

Rev 05-12

Produced Pursuant to Protective Order    SANDOVAL_RAMOS003710

# POSTMORTEM TOXICOLOGY WORKSHEET

p²⁸

Lab Case # 14M- 408
Standard packaging?   x Yes □ No (if no, describe): 

ANALYST   SS
DATE:   05MAY14

Sample(s) received and exhibit number(s):

( ) Cardiac or Aorta blood
I (2g) Femoral or Subclavian blood
( ) Unknown draw site (blood)
1 (1r) Urine
( ) Vitreous Humor
( ) Hospital_____
( ) _____

(x) Labeled as:   ( ) Reported from:

Delong, Justin

NOTES:  suspected IVDA- heroin

**Quantitative Results (blood): (mg/L)**
() Fails to detect controlled substances or common pharmaceuticals

morphine, free  0.085 ± 0.014
morphine, gluc  > 0.800

**Qualitative Results (urine):**
() Fails to detect controlled subs, or common pharms

codeine
6MAM
heroin

morphine - indicated

**Blood Volatiles Results:** Ethanol 0.000 g/dL     Acetone N/D mg/dL Date: 13MAY14

**ELISA BLOOD**   Pos/Neg controls acceptable □ Yes □ No          Date: 06MAY14

□ Amph        □ Benzos          □ Methadone      □ Oxycodone
□ Barbs       □ Cannabinoid     □ Methamp        □ Tricyclics
□ BE/Coc      □ Fentanyl        □ Opiates                         □ all NEGATIVE

**EMIT URINE**   Pos/Neg controls acceptable: □ Yes □ No          Date: 06MAY14

□ Amph        □ Benzos          □ Cocaine    □ Opiate        □ Zolpidem        □ Buprenorphine
□ Barbs       □ Cannabinoid     □ Methadone  □ Carisoprodol  □ Oxycodone       □ all NEGATIVE

**Extractions:**
□ Blood SPE GC/MS  12MAY14        □ ACN Opiate v2 LC/MS/MS  21MAY14
□ Urine SPE GC/MS  07MAY14        □ ACN Benzo v2 LC/MS/MS  _____
□ Urine Liq Ext GC/MS  _____     □ ACN Rx v2 LC/MS/MS  _____
□ Remix III LC/MS/MS  _____     □ ACN OTC v2 LC/MS/MS  _____
□ Amp LC/MS/MS  _____

**Sent-out for testing:**      □ PEGenetics              □ NMS

**Blood Co-Oximetry**
□ UV-Vis Spec   □ GEM 4000      %COHb: _____              Date: _____

**Vitreous Electrolytes** Na⁺_____ K⁺_____ Cl⁻_____ Ca⁺⁺_____ Glucose_____ Date:____
Gem Premier 4000               mmol/L   mmol/L   mmol/L    mmol/L      mg/dL

| Quality Control: | Positive controls acceptable | □ Yes □ No | Pipettes: | 1000µL SS G0710968J |
| | Negative controls and blanks acceptable | □ Yes □ No | | 100 µL SS D07607041 |
| | Vial position on auto-sampler verified | □ Yes □ No | | 10 µL F07862161 |

Produced Pursuant to Protective Order